**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION – BAY CITY**

_____

In re:                                              ) Case No. 14-22602-dob
                                                    )
TREETOPS ACQUISITION COMPANY, LLC,                  ) Chapter 11
                                                    )
                                                    ) HON. DANIEL S. OPPERMAN
                            Debtor.                 )
_____            )

## COVER SHEET FOR MOTION TO USE CASH COLLATERAL OR TO OBTAIN CREDIT

The Debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |

{37074/1/DT908742.DOC;1}

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | __X___ Yes<br><br>_____ No | Pages 11-12, ¶ 19 |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | __X__ Yes<br><br>_____ No | Page 7, ¶ 8 |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | __X___ Yes<br><br>_____ No | Page 13, ¶ 22 |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | ___X__ Yes<br><br>_____ No | Page 14, ¶ 23 |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | __X___ Yes<br><br>_____ No | Page 14, ¶ 23 |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | __X___ Yes<br><br>_____ No | Page 8, ¶ 14 |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |

Dated:  November 26, 2014          Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**
Proposed Counsel for Debtor and
Debtor-in-Possession

By:    /s/Daniel G. Byrne
       Jason W. Bank (P54447)
       Daniel G. Byrne (P72287)
500 Woodward Ave., Suite 2500
Detroit, MI  48226
(313) 961-0200
dbyrne@kerr-russell.com

{37074/1/DT908742.DOC;1}

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION – BAY CITY

_____

In re:                          )   Case No. 14-22602-dob

                                      )

TREETOPS ACQUISITION COMPANY, LLC,   )   Chapter 11

                                      )

                                      )   HON. DANIEL S. OPPERMAN

                     Debtor.         )

_____ )

### FIRST DAY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POST-PETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL (III) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (IV) GRANTING RELATED RELIEF

      The above captioned Chapter 11 Debtor (the "Debtor"), by and through its undersigned counsel, submits this Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing; (ii) Authorizing Use of Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status, and (IV) Granting Related Relief (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

### PRELIMINARY STATEMENT AND SUMMARY

      1.      In accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2, the Debtor provides the following summary of the proposed use of Cash Collateral[1] and postpetition financing under a debtor-in-possession loan facility (the "DIP Loan Facility"):

        •      TAC II, LLC ("TAC II") is the only secured creditor of the Debtor with an interest in Cash Collateral.

---

[1] Capitalized terms not defined in this Motion shall have the meanings ascribed to such terms in the Bankruptcy Code or in the proposed Interim Order attached hereto as Exhibit A.

- The Debtor seeks to use up to $1,016,570 of Cash Collateral (subject to amendment as the budgeting process may evolve prior to a hearing on this Motion) between the Petition Date and the date of a final hearing on this Motion or when the Interim Order becomes the Final Order (estimated to be 4 weeks), however, the amount requested will be greater, as reflected in the Budget, if the hearing is held later than December 31, 2014.

- As adequate protection for any use of Cash Collateral and any postpetition diminution in the value of Prepetition Collateral, TAC II will be granted a replacement lien on all Postpetition Property and a superpriority claim under 11 U.S.C. § 507(b).

- The estimated value of the Prepetition Collateral on a liquidation basis is less than $10 million.

- The Debtor seeks authorization to enter into the DIP Loan Facility.

- The Declaration of Richard B. Owens filed contemporaneously with this Motion sets forth the facts on which the Debtor relies for seeking the entry of the Interim Order on an expedited basis and the amount of Cash Collateral use that is necessary to avoid irreparable harm.

## JURISDICTION; STATUTORY PREDICATES

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 362 and 363, Bankruptcy Rules 2002 and 4001 and Local Bankruptcy Rules 4001-2 and 4001-3.

## BACKGROUND

4.      On November 25, 2014 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq*., as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan, Northern Division – Bay City (the "Court").   The Debtor intends to continue in possession of its property and manage its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed and no committees have as yet been designated or appointed in this Chapter 11 case (the "Case").

5.      The Debtor was formed in 2002 to acquire by purchase substantially all of the real and personal property of the Treetops golf and ski resort (the "Treetops Resort") from Melling Resorts International, Inc. ("Melling Resorts") for approximately $26 million (the "Acquisition"). The Acquisition was funded by a combination of Comerica Bank first mortgage debt ($10 million), Melling Resorts second mortgage seller financing debt ($4 million) and cash equity from the Debtor's members ($12 million).

6.      The Treetops Resort is located in Gaylord, Michigan and is considered a premier full-service golf, ski and spa destination resort with 5 golf courses, 23 ski runs, restaurants, lodging and conference facilities, day care and a golf school.  The Debtor's facilities are open to the general public and are also used to host a variety of golf events and tournaments. The Debtor also owns acreage contiguous to golf courses suitable for the development of residential home sites and condominiums.

7.      The Debtor annually has approximately 517 full-time and part-time leased employees and has business arrangements with numerous independent contractors and/or trade suppliers.

8.     In the years following the Acquisition, the Debtor's operations generated substantial operating losses and cash flow deficits that were funded by additional capital contributions, mortgage secured loans and unsecured loans, all made by the Debtor's members.

9.     In 2010, the Debtor hired Richard B. Owens to replace its existing manager, Richard Smith, and, under Owen's management, the Debtor's operations have improved significantly even in the face of a sluggish economy.

10.     In 2010, under pressure from its senior secured lender, Citizens Bank[2], several members of the Debtor formed and funded TAC II, LLC, a Michigan limited liability company, to purchase the Citizens Bank senior secured debt[3].

11.     Since 2011, the Debtor has not been able to generate sufficient income and cash flow to make all interest payments on the TAC II senior secured debt or to retire any of the principal[4] and has accumulated significant accounts payable obligations.  As a result has been unable to obtain any additional financing for additional real estate development and refurbishment of its facilities and infrastructure.

12.     The Debtor has also received a demand for payment and the threat of a collection suit from its single largest unsecured creditor and a demand for payment from TAC II.

13.     For the past 24 months, the Debtor has attempted to negotiate acceptable discounted settlements with its creditors but has been unsuccessful in this effort; the Debtor is unable to obtain other funds, either in the form of financing or equity; and, accordingly, the

---

[2] Citizens had refinanced the Comerica senior secured debt in 2007, after Comerica had pressured the Debtor for payment.
[3] The purchase was completed in 2 steps, a $5,000,000 payment for a subordinated participation in 2010 and a $6,900,000 payment in 2011 to purchase the Citizens debt in total, all of which was funded in cash by the TAC II members. After the purchase, the members of the Debtor and TAC II advised Owens that they would not be making any future cash injections or loans to the Debtor.
[4] The Debtor has never made any payments on (i) the $4 million junior secured indebtedness owing to Melling Resorts, (ii) the $3 million junior secured indebtedness owing to its members, or (iii) unsecured indebtedness owing to its members.

Debtor has determined that a restructuring of its indebtedness in Chapter 11 reorganization with a secured debt for equity exchange will provide the best opportunity for the Debtor to attract financing and/or capital to achieve profitability.

14.    Effective as of November 1, 2014, the Debtor and TAC II entered into a Restructuring Support Agreement ("RSA") pursuant to which TAC II agreed to support a debt restructuring of the Debtor in a Chapter 11 bankruptcy proceeding, including provision for the use of cash collateral and debtor-in-possession financing.

15.    Pursuant to the RSA, on November 25, 2014 (the "Petition Date"), the Debtor commenced this Chapter 11 case by filing a voluntary petition.

16.    As of the Petition Date, the Debtor has secured debt obligations owing to (i) TAC II under the Prepetition Loan Documents of approximately of $13,000,000; (ii) Melling Resorts of approximately $6 million, and (iii) to several of the Debtor's members in excess of $3 million.

## RELIEF REQUESTED

17.    The Debtor requests the following relief:

a.    The Debtor seeks authority to obtain the DIP Loan Facility from TAC II under § 364(d)(1) of the Bankruptcy Code;

b.    The Debtor seeks authority to use Cash Collateral of TAC II, subject to the granting of adequate protection and a superpriority claims to TAC II under Section 507(b) of the Bankruptcy Code;

c.    The scheduling by the Court, pursuant to Bankruptcy Rule 4001, of an interim hearing on the Motion to be held by the Court to consider entry of the proposed Interim Order annexed hereto as Exhibit A (a) authorizing Debtor to use Cash Collateral of TAC II and

to grant adequate protection to TAC II, and (b) authorizing the Debtor to obtain the DIP Loan Facility;

> d. The scheduling by the Court, pursuant to Bankruptcy Rule 4001, of a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order to continue the Interim Order on a final basis.

## TERMS OF DEBTOR'S USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

18.     The Debtor needs use of Cash Collateral to pay for the costs of operation of its golf and ski resort. In particular, the Debtor typically incurs cash flow deficits during the winter months.

19.     The Debtor has prepared a cash flow budget for the months in the period commencing on the Petition Date through March 31, 2015 (the "Budget") attached hereto as Exhibit C.

20.     The Debtor does not have unencumbered cash or any other sources of cash for payment of expenses under the Budget.  Accordingly, the Debtor requires the use of Cash Collateral, including cash generated from the Debtor's operations to properly continue its business operations.  The need for use of Cash Collateral is immediate. In the absence of such use, serious and irreparable harm to the Debtor and this estate will occur.

21.     Accordingly, the use of the Cash Collateral is necessary to avert interruptions in the Debtor's operations, to engender confidence it its customers, which include businesses and the general public, to enable the Debtor to preserve and maximize the value of its assets, and is clearly in the best interests of the Debtor's estate.

22.     Pursuant to the REA, TAC II has agreed to permit the Debtor's use of Cash Collateral to fund its operations pursuant to an approved budget.

23.     As adequate protection for TAC II's liens and security interests in the Prepetition Collateral for the Debtor's use of Cash Collateral and all other Prepetition Collateral, TAC II will be granted the following adequate protection pursuant to section 361 of the Bankruptcy Code:

a.      <u>Adequate Protection Liens</u>. TAC II will be granted valid, enforceable, perfected replacement liens and security interests in all of the Postpetition Collateral (the "<u>Adequate Protection Liens</u>") to the extent of the aggregate diminution in value, if any, of such liens and interests after the Petition Date, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtor (or other decline in value) of Cash Collateral and any other Collateral (the "<u>Diminution in Lien Value</u>"); and

b.      <u>Section 507(b) Superpriority Claims</u>. TAC II will have superpriority claims, as provided in section 507(b) of the Bankruptcy Code, against the Debtor and all property of the Debtor's estate, in an amount equal to the Diminution in Lien Value, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code.

c.      The authorization of the Debtor to continue to use Cash Collateral will cease upon the occurrence of any Event of Default and the election of TAC II to direct the Debtor to cease using Cash Collateral, as set forth in the Interim Order.

### <u>TERMS OF THE DIP LOAN FACILITY</u>

24.     Pursuant to the RSA and subject to the terms of the Interim Order, TAC II has agreed to provide financing to the Debtor from time to time to the extent the Debtor does not have adequate Cash Collateral to pay expenses as contemplated by the Budget.

25.     As indicated in the Budget, the Debtor will require additional cash during the winter months in addition to the utilization of its existing Cash Collateral to sustain the Debtor's

operations and to engender confidence it its customers, which include businesses and the general public, to enable the Debtor to preserve and maximize the value of its assets, and is clearly in the best interests of the Debtor's estate.

26.     The Debtor is unable to obtain financing on more favorable terms from other sources other than terms offered by TAC II and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit under section 364(c) and (d) of the Bankruptcy Code on equal or more favorable terms than those offered by TAC II.

27.     The terms of the postpetition secured credit offered by TAC II are fair and reasonable, were negotiated by the parties at arm's length and in good faith and are the best available to the Debtor under present market conditions and the Debtor's financial circumstances.

28.     Among other things, Postpetition Advances under the DIP Loan Facility will be secured by a first priority lien on all assets of the Debtor's estate and accrue interest at the Wall Street Journal prime rate (currently, 3.25%) + 0.75%.   TAC II shall be entitled to a superpriority administrative expense claims under Section 507(b) of the Bankruptcy Code for all such Postpetition Advances.  The DIP Loan Facility will be subject to all terms and conditions of the DIP Loan Agreement and the Budget.

29.     A copy of the DIP Loan Agreement is attached hereto as <u>Exhibit B</u>.

<b><u>NOTICE</u></b>

30.     Notice of this Motion has been provided to all necessary parties, including, but not limited to, (i) the twenty largest unsecured creditors of the Debtor; (ii) secured creditors of the Debtor with an interest in Cash Collateral; and (iii) the Office of the United States Trustee, via e-mail, overnight mail, or first class U.S. Mail. Due to the urgency of the circumstances

surrounding this Motion, and the nature of the relief requested, the Debtor respectfully submits that no further notice of this Motion is required.

WHEREFORE, the Debtor respectfully requests that this Court (i) grant the relief requested in this Motion; (ii) enter the Interim Order in the form attached hereto as Exhibit A; (iii) schedule a Final Hearing on this Motion; and (iv) grant such other and further relief as is appropriate in the circumstances.

Dated:  November 26, 2014          Respectfully submitted,

                                   **KERR, RUSSELL AND WEBER, PLC**
                                   Proposed Counsel for Debtor and
                                   Debtor-in-Possession

                                   By:____/s/Daniel G. Byrne_____
                                        Jason W. Bank (P54447)
                                        Daniel G Byrne (P72287)
                                   500 Woodward Ave., Suite 2500
                                   Detroit, MI  48226
                                   (313) 961-0200
                                   dbyrne@kerr-russell.com

**<u>EXHIBIT A</u>**

**INTERIM ORDER AUTHORIZING DEBTOR TO (I) OBTAIN SECURED POSTPETITION FINANCING, (II) USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (IV) GRANTING OTHER RELIEF**

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION – BAY CITY

_____

In re:                                                 ) Case No.  14-22602-dob
                                                       )
TREETOPS ACQUISITION COMPANY, LLC,     ) Chapter 11
                                                       )
                                                       ) HON. DANIEL S. OPPERMAN
                              Debtor.                 )
_____  )


## INTERIM ORDER AUTHORIZING DEBTOR TO (I) OBTAIN SECURED POSTPETITION FINANCING, (II) USE CASH COLLATERAL (III) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (IV) GRANTING OTHER RELIEF

Upon the Motion (the "Motion") of the above-named Debtor ("Debtor") for an order pursuant to Sections 363, 364(c) and (d) of Title 11 of the United States Code (the "Bankruptcy Code") and L.B.R. 4001-2(d) to (i) obtain secured postpetition financing pursuant to the terms and conditions set forth in that certain Agreement Regarding Debtor-In-Possession Financing, Use of Cash Collateral and the Providing of Adequate Protection dated as of November 25, 2014 (the "DIP Loan Agreement" and, together with all documents arising therefrom and/or executed in connection therewith, the "DIP Loan Documents"), among Debtor and TAC II, LLC ("Lender"), a copy of which DIP Loan Agreement is attached hereto as Exhibit A, (ii) authority to use funds that may constitute cash collateral of Lender ("Cash Collateral") for payment of costs and expenses incurred in the ordinary course of Debtor's business and the management of its assets, and (iii) the granting of provisions for adequate protection to Lender in respect of its interests in property of Debtor; this Order having been approved for entry by Debtor, Lender and the U.S. Trustee, and the Court being otherwise fully advised; and sufficient cause appearing therefor,

**THE DEBTOR AND LENDER HAVE ASSERTED THAT:**

A.       On November 25, 2014 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern

District of Michigan, Northern Division (Bay City), and has continued the operation of its business as a debtor-in-possession.

B.       Before the commencement of this case, Debtor was indebted to Lender pursuant to the terms of the Prepetition Loan Documents (as defined in the Motion).  The Prepetition Loan Documents and the DIP Loan Documents are collectively referred to as the "Loan Documents."

**C.**       To secure its obligations under the Prepetition Loan Documents, and pursuant to the Loan Agreement, Debtor and Lender assert that Debtor granted Lender a first priority lien and security interest in all of Debtor's tangible and intangible personal property as described in the Prepetition Loan Documents (collectively, the "Prepetition Collateral").

D.       Prior to the Petition Date, Debtor defaulted under the Prepetition Loan Documents. Debtor acknowledges and agrees that as of the Petition Date, the Prepetition Indebtedness (as defined below) is due and payable in full.

E.       Prior to the Petition Date, the Debtor and Lender entered into a Restructuring Support Agreement pursuant to which Lender agree to provide support for a Chapter 11 reorganization proceeding of the Debtor, including, providing for the use of cash collateral, postpetition financing and terms of a Chapter 11 plan of reorganization based on a debt for equity exchange by Lender.

F.       The Lender asserts that the Prepetition Indebtedness constitutes a valid and binding obligation of Debtor without offset, recoupment, counterclaim, deduction, defense or claims of any kind and is secured by liens and security interests granted by Debtor to Lender in the Prepetition Collateral.

G.       The Lender asserts that Lender's security interests and liens in the Prepetition Collateral are valid, properly perfected and recorded and are unavoidable and indefeasible in this bankruptcy case or otherwise.

H.       Debtor on its own behalf only agrees not to object to Lender's security interests in the Prepetition Collateral, and by stipulating to this Order, Debtor covenants that it will refrain from commencing any action or suit, or prosecuting any pending action or suit, in law or in equity, against Lender, or its respective agents, attorneys, employees, heirs, executors, administrators, officers, directors,

successors and assigns, on account of any action or cause of action relating to the Prepetition Loan Documents and the Prepetition Indebtedness which now exists or which may hereafter accrue in its favor upon the basis of facts existing as of the date of this Order.

I.        As of the Petition Date, Lender asserts and Debtor acknowledges that there was due and owing from Debtor to Lender, the sum of $11,513,394 in principal, plus accrued interest of $2,170,733, plus costs and expenses, and attorneys' and consultants' fees of Lender (together with all other obligations of Debtor that arose prior to the Petition Date pursuant to the Prepetition Loan Documents, the "Prepetition Indebtedness").

J.        Debtor and Lender have asserted that, as of the Petition Date, the liquidation value of the Prepetition Collateral is less than the amount of the Prepetition Indebtedness and that the Prepetition Indebtedness is not fully secured by the Prepetition Collateral.

K.        All amounts on deposit in all of Debtor's bank and/or checking accounts with any one or more banks constitute Cash Collateral in which Lender holds an interest, except for trust fund taxes.

L.        Debtor desires that Lender make available to it for its benefit a postpetition non-revolving loan facility in an amount up to $1,000,000 for payment of operating expenses and certain necessary capital improvements (the "DIP Loan Facility") and allow Debtor to continue to use Cash Collateral, subject and pursuant to the terms and conditions described in the DIP Loan Documents.

M.        Lender has agreed to provide the DIP Loan Facility for the aforementioned purposes and to allow Debtor to continue to use Cash Collateral, but only upon the terms and subject to the conditions contained in the DIP Loan Documents and this Order, including but not limited to the grant of security interests in the Prepetition Collateral and the Postpetition Collateral (as defined in the DIP Loan Agreement) (collectively, the "Collateral") under the DIP Loan Documents.

N.        Debtor urgently requires the use of Cash Collateral and financing and credit under Section 364 of the Bankruptcy Code to purchase inventory and to fund its day-to-day operations. Debtor believes it will be unable to pay operating expenses to continue its business operations without the DIP

Loan Facility, which would diminish the going concern value of Debtor and thereby result in substantially lower recoveries to the creditors of Debtor's estate.

O.      Debtor and its business and properties will be immediately and irreparably harmed if not permitted to obtain secured credit on an interim basis pending the final hearing on the Motion.  In the circumstances of this case, the granting of the relief requested by the Motion is warranted.  Pending finalization of the DIP Loan Agreement, Lender has consented to the use by Debtor of Cash Collateral of $1,176,494 for payment of its expenses of operation from the Petition Date through December 31, 2014.

P.      Despite its efforts, Debtor is unable to obtain (i) unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, (ii) unsecured credit allowable under Sections 364(a) or 364(b) of the Bankruptcy Code, or (iii) secured credit under Section 364(c) of the Bankruptcy Code, from any source sufficient to enable Debtor to continue its business operations.  Debtor is also unable to obtain a borrowing facility without (a) granting the claims of the lender priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(d) of the Bankruptcy Code in accordance with Section 364(c)(1) of the Bankruptcy Code; and (b) securing the postpetition obligations with liens on all assets of Debtor in accordance with Sections 364(c)(2) and 364(d) of the Bankruptcy Code.

Q.      The ability of Debtor to obtain a postpetition loan facility to finance its operations and the availability to Debtor of sufficient working capital and liquidity under such facility are vital to Debtor's ability to maintain the confidence of its customers, including the general public, and its ability to preserve its going concern value while Debtor.  The financing contemplated by the DIP Loan Documents is in the best interests of Debtor.  Accordingly, the interest, fees and other costs associated with the financing contemplated by and/or referenced in the DIP Loan Document are actual and necessary costs of preserving the estates of Debtor.

R.      The terms of the proposed DIP Loan Documents are fair and reasonable, and were negotiated and entered into by the parties in good faith and at arm's length.  All Postpetition Advances

made to Debtor by Lender pursuant to the DIP Loan Agreement shall be deemed to have been extended and made in good faith, as that term is used in Sections 363(m) and 364(e) of the Bankruptcy Code.

S.     Capitalized terms not defined in this Interim Authorizing Order shall have the same meaning as defined in the DIP Loan Documents.

T.     This Order complies with the requirements set forth in F.R.B.P. 4001 and L.B.R. 4001-2.

Based on the foregoing, the Court being duly advised in the premises, and no further notice being required,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is hereby granted.

2.     The DIP Loan Agreement is hereby approved to the extent of any advances thereunder ("Postpetition Advances") pursuant to this Order and Debtor is authorized to receive financing from and incur obligations to Lender, in each case in Lender's sole discretion, and to grant security interests and liens in favor of Lender, upon the terms and conditions contained in the DIP Loan Documents; provided, however, that the aggregate amount of the Postpetition Advances prior to this Order becoming a Final Order or the entry of the Final Authorizing Order shall be only that amount which is necessary to avoid immediate and irreparable harm, and in no event shall exceed $250,000. Debtor is further authorized to use Cash Collateral and provide adequate protection upon the terms and conditions contained in the DIP Loan Agreement and this Order.

3.     Debtor is hereby authorized to execute and deliver to Lender all documents and instruments related to or contemplated by the DIP Loan Agreement and the DIP Loan Documents and are hereby authorized to comply with and perform its obligations under the DIP Loan Documents. Richard. B. Owens, Manager of Debtor, is designated as the responsible party for Debtor who shall be accountable for insuring that the proceeds of all Postpetition Advances are applied by Debtor strictly in the ordinary course of its business, for those purposes and otherwise as contemplated by this Order; and, for insuring that all cash proceeds of sales of inventory of Debtor and all other cash received by Debtor are deposited in the Central Account and/or the Other Accounts and disbursed therefrom as provided in the DIP Loan

Documents and as contemplated by this Order. The Debtor shall act as a debtor-in-possession and discharge the duties and responsibilities of a debtor-in-possession as required under the Bankruptcy Code.

4. Debtor may use Cash Collateral and obtain Postpetition Advances only for the purposes permitted under the DIP Loan Agreement which include, without limitation, the payment of administrative expenses. All cash and checks of Debtor currently in its possession or otherwise shall be deemed proceeds of the Prepetition Collateral and, upon entry of this Order, Debtor shall deliver such proceeds and all other proceeds of Prepetition Collateral and Postpetition Collateral to Lender for application to the Postpetition Indebtedness and the Prepetition Indebtedness as provided in the DIP Loan Documents.

5. Subject to the restrictions in Section 7.2 of the DIP Loan Agreement, the automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to take any and all actions permitted, authorized or required by the DIP Loan Agreement.

6. To secure the Postpetition Indebtedness, Lender is granted a perfected, first priority lien on and security interest in all property of Debtor's estate as that term is defined in Section 541(a) of the Bankruptcy Code pursuant to Sections 364(c)(2) and 364(d) of the Bankruptcy Code, whether arising or existing prepetition or postpetition, as more specifically set forth in the DIP Loan Documents (collectively, the "Postpetition Collateral"). All liens and security interests granted herein and under the DIP Loan Documents are hereby deemed perfected, and no further order, notice, filing or other action whatsoever on behalf of Lender shall be required to effect such perfection.

7. The Postpetition Indebtedness of Debtor shall constitute, pursuant to Section 364(c)(1) of the Bankruptcy Code, a claim having priority over any and all administrative expenses of Debtor's estate of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code. Except as expressly permitted in the DIP Loan Agreement, no claims arising prior to the Termination Date as to the DIP Loan Facility shall be prior to or on parity with the claims of Lender against Debtor arising from the Postpetition Indebtedness, or with respect to Lender's security interest in the Prepetition or Postpetition Collateral. No surcharge under any provision of the Bankruptcy Code, including Section 506(c), will be

imposed against Lender's interests in the Prepetition Collateral or the Postpetition Collateral for any charges or expenses incurred prior to the Termination Date as to the Interim DIP Loan Facility. Lender's consent to any surcharge under Section 506(c) of the Bankruptcy Code shall not be presumed or implied in any manner from this Order or any action or inaction except for a written consent, signed by Lender, which identifies Section 506(c) of the Bankruptcy Code by specific reference.

8.      Lender's Prepetition Indebtedness is hereby allowed, pursuant to Sections 502 and 506 of the Code, as a fully secured claim in the amount due Lender according to Lender's books and records as of the Petition Date. Lender's liens on and security interests in the Prepetition Collateral are hereby deemed to be valid, perfected, enforceable and non-avoidable, and Lender's Prepetition Indebtedness against Debtor and its estate are hereby allowed as valid, enforceable and non-avoidable in the amount of the Prepetition Indebtedness. Without limiting any other term or provision of this Order, the sixtieth (60th) day following the entry of this Order (the "Objection Deadline") shall, except to the limited extent set forth in the final sentence of this Section, additionally constitute the last date that any objections and/or challenges to this Order and/or any of the Prepetition Loan Documents, including without limitation insofar as concerns or affects the Prepetition Indebtedness and/or the Prepetition Collateral of Lender, may be raised or asserted by any person or entity who is not consenting to or approving of this Order, including without limitation any objection or challenge to: (a) any of Lender's Indebtedness; (b) any of the findings of fact set forth herein; and (c) the validity, perfection, priority and enforceability of any liens and security interest of Lender in the Prepetition Collateral. On and after the Objection Deadline, any and all later asserted objections and challenges are hereby declared to be waived, released and unconditionally, absolutely and finally barred. As the sole exception to the foregoing, an official Unsecured Creditors' Committee ("Committee") may file written objections to the prospective applicability of this Order as to Postpetition Advances may thereafter be made by Lender to Debtor, provided that such objections occur within sixty (60) days of the Committee's formation. Nothing in this Order shall preclude the Committee from seeking payment of its fees and expenses from the Collateral; however, no consent of Lender to such payment shall be presumed or implied in any manner from this

Order or any action or inaction of Lender except for a written consent signed by Lender specifically referring to such payment.

9.      Debtor acknowledges that the liquidation value of the Prepetition Collateral is less than the amount of the Prepetition Indebtedness.

10.      As adequate protection of Lender's interest in the Prepetition Collateral arising from Debtor's use of the Prepetition Collateral in accordance with this Order, Debtor shall be obligated to pay interest and principal on the Prepetition Indebtedness as set forth in the DIP Loan Documents; and, Lender is granted full replacement liens and security interests in the Postpetition Collateral as security for the Prepetition Indebtedness pursuant to Sections 363(e) and 364(c)(3) and 364(d)(1)(B) of the Bankruptcy Code, which liens shall be second in priority only to the liens in the Postpetition Collateral granted to Lender to secure the Postpetition Indebtedness under this Order and the DIP Loan Documents, and subject to valid and perfected prepetition liens as of the Petition Date, if any, of holders of properly perfected, unavoidable liens and security interests determined to have priority over the prepetition liens and security interests of Lender.

11.      All of Lender's Expenses (as defined in the DIP Loan Agreement) shall, in each instance, be added to and become a part of the Postpetition Indebtedness.  Debtor shall be obligated to Lender for all Lender's Expenses as provided in the DIP Loan Agreement.

12.      Upon the occurrence of an Event of Default, Lender shall have all of the rights and remedies provided under, and shall be subject to the limitations set forth in, the DIP Loan Documents.

13.      As further adequate protection to Lender, Debtor shall provide Lender with the reports and access to all books and records of Debtor as set forth in the DIP Loan Documents.  Debtor shall timely submit to Lender the periodic revised Budgets as requested by Lender and all other reports as required in the DIP Loan Documents.

14.      The provisions of the DIP Loan Documents shall be binding upon and inure to the benefit of Debtor, Lender, and their respective successors and assigns (including any trustee hereafter appointed or elected as a representative of Debtor's estate, whether in this bankruptcy case or in any subsequent case

under Chapter 7 of the Bankruptcy Code). The priorities, liens and security interests provided for under the DIP Loan Documents shall continue in this or any superseding case of Debtor under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied and discharged. Further, no confirmed plan of reorganization or liquidation shall be implemented without the Postpetition Indebtedness being paid in full or otherwise provided for in accordance with the DIP Loan Documents.

15. If any or all of the provisions of this Order or any document between the parties are hereafter modified, vacated, stayed or terminated by subsequent order of this Court or any other court, such modification, vacation or stay shall not affect (i) the validity of any debt under the DIP Loan Documents to Lender that was incurred pursuant to this Order prior to the effective date of such modification, vacation, stay or termination, or (ii) the extent, validity, priority and enforceability of any lien or security interest of Lender granted pursuant to this Order and the DIP Loan Documents, except to the extent that any party in interest is successful, in whole or in part, in challenging the extent, validity or priority of Lender's liens in the Prepetition Collateral and notwithstanding such modification, vacation, stay or termination, any obligations of Debtor pursuant to this Order or the DIP Loan Documents arising prior to the effective date of such modification, vacation, stay or termination shall be governed in all respects by the original provisions of this Order, and the DIP Loan Documents. Lender shall be entitled to all of its rights, privileges and benefits hereunder and thereunder including, without limitation, the liens, security interests, priorities and collection rights granted herein to or for the benefit of Lender with respect to all Postpetition Advances made pursuant to the DIP Loan Documents.

16. Postpetition Advances extended by Lender under the DIP Loan Documents shall be deemed to have been extended in good faith as contemplated by Section 364(e) of the Code.

17. Notwithstanding anything herein to the contrary, this Order shall not be construed in any way as a waiver or relinquishment of any rights Lender may have to be heard on any matter brought before the Bankruptcy Court or to seek the appointment of a trustee or examiner under Section 1104 of the Bankruptcy Code, conversion of the Chapter 11 case of Debtor to a case under Chapter 7 pursuant to

Section 1112 of the Bankruptcy Code, or oppose extension of the exclusivity periods of Section 1121 of the Bankruptcy Code. Nor shall consent to this Order be construed as a waiver of the existing defaults under the Prepetition Loan Documents and any other documents and agreements between Debtor and Lender, nor shall any delay on the part of Lender in exercising any right, power or privilege hereunder operate as a waiver therefor, nor shall any single or partial exercise of any right, power or privilege. The rights and remedies hereunder specified are cumulative and not exclusive or any rights or remedies which Lender may otherwise have.

18.     Any default under or failure to perform, keep or observe any term, provision, condition, covenant, warranty, promise, undertaking or representation in the DIP Loan Documents or this Order shall constitute an Event of Default hereunder. Without limiting the foregoing, it shall additionally constitute an Event of Default hereunder if Debtor seeks to vacate, stay, reverse, modify or abrogate this Order and/or any of the DIP Loan Documents in any respect.

Upon an occurrence of an Event of Default, or upon occurrence of the Termination Date or any such extended date thereof as Lender may agree to in writing in Lender's sole discretion and at all times thereafter, Debtor shall at Lender's election immediately cease requesting of Lender any further Postpetition Advances under this Order and/or the DIP Loan Documents, as well as using all monies and funds of any kind which are proceeds of the Collateral of Lender and/or amounts previously made available to Debtor by Lender. In such circumstances, Debtor shall immediately segregate and hold all such monies and funds in trust for Lender and shall promptly turn over all such funds and monies to Lender pending further order of the Court, after a hearing upon notice to all affected parties.

19.     The automatic stay provisions of the Code will be lifted and terminated as to Lender to the full extent necessary to implement the provisions of this Order, including, without limitation, in order for Lender immediately to proceed, without further delay, hindrance or motion to enforce its rights and remedies upon the occurrence of a default or an Event of Default and the giving of 5 days' notice thereof to Debtor and Debtor's counsel, and to realize upon, apply and to retain the proceeds of Collateral for all purposes set forth herein. Upon receipt of such notice, Debtor shall provide such notice to the Committee

or, if not formed, the 20 largest creditors. Debtor and any other interested parties at that time shall only have the right to contest the existence of an Event of Default. Upon the occurrence of an Event of Default: (a) Lender may, but is not required to take possession of any and/or all of its Collateral and, upon Lender's request, Debtor, as well as any superseding trustee in bankruptcy, shall immediately surrender and deliver peaceful possession to Lender, or its authorized agent, of all such Collateral between Debtor and Lender, whether executed pursuant to this Order or prior to the commencement of this Chapter 11 case, and Lender, at its sole election, shall be authorized to liquidate all or any portion of its Collateral in accordance with the provisions of Lender's various agreements with Debtor and applicable law, including without limitation Article 9 of the Uniform Commercial Code, or to retain such Collateral in satisfaction of Lender's indebtedness due from Debtor; (b) Lender may at any time notify account debtors of Debtor and any other party(ies) at any time and from time to time obligated to make payments to or for the account of Debtor with respect to Collateral of Lender, to not pay any such sums to Debtor, but to only pay such funds directly to Lender, to take any such action Lender deems appropriate to collect such accounts and other Collateral; (c) Debtor is to immediately cease requesting from Lender any further Postpetition Advances by Lender under or in relation to the DIP Loan Documents and/or this Order, Lender need not further consider any pending or future requests of Debtor in this regard and Debtor's right under this Order to use any proceeds of Collateral of Lender, including without limitation any Cash Collateral, as well as any funds or amounts previously made available to Debtor by or through Lender, shall automatically terminate; and (d) Lender may also exercise any and all rights and remedies available under the Loan Documents or under applicable law, without any duty of Lender to marshal assets or to be bound by any other doctrine which could prohibit or restrict the ability of Lender in choosing to foreclose on or enforce its rights as to any portion of the Collateral. Without limiting the foregoing, Lender shall also, after the occurrence of an Event of Default and without any further demand or notice to Debtor or any further order of this Court, be entitled, at Lender's election, to terminate any further performance by Lender under the Loan Documents. The right of Lender to exercise all of its remedies with respect to the liens and security interests encumbering the Collateral and securing the Aggregate Indebtedness of Debtor

to Lender in accordance with the provisions of this Order without delay is an integral and fundamental part of the DIP Loan Agreement and all Postpetition Advances provided for in this Order are made in reliance on such right. Following any such termination, Lender shall have no liabilities, responsibilities or obligations, whether to make any Postpetition Advances to Debtor thereunder or in any other respect. In connection with the enforcement of each and all of the above remedies, Debtor agrees to fully cooperate with Lender, consents thereto and hereby agrees not to take any steps or actions to contest or otherwise challenge the exercise thereof. Debtor also hereby irrevocably waives all of its rights to question or oppose the granting of any such relief to Lender. Lender shall give Debtor's counsel two (2) days notice prior to exercise of Lender's rights and remedies as to its Collateral, and Debtor and any other interested parties at that time shall only have the right to contest the existence of an Event of Default and shall not have any entitlement to, and shall not directly or indirectly raise, any other claims of any kind. In connection with any proceeding before the Court seeking a determination whether or not Debtor is in default under the terms of this Order, or whether such default or Event of Default has been cured, Debtor shall not seek relief under 11 USC Section 105, B.R. 7065, or pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (as applied pursuant to B.R. 9024), or request in any way that the general equitable powers of the Court be invoked to enjoin Lender in pursuit of its rights under the DIP Loan Agreement and/or this Order. Nothing contained herein, however, is or shall be deemed to limit, change or otherwise adversely affect Lender's right to cease making Postpetition Advances upon the occurrence of an Event of Default. Furthermore, nothing contained herein, however, is or shall be deemed to prejudice the right of Lender to seek modification of the grant of adequate protection provided by this Order, so as to provide different adequate protection.

20. As adequate protection for its interest in Debtor's Cash Collateral, Lender is hereby granted a secured interest and lien on the Postpetition Collateral. This security interest and lien upon the Postpetition Collateral shall only secure the amount of any decrease in the value, as of the Petition Date, of Lender's interest in Cash Collateral as of the commencement of this case.

21.     The security interests and liens granted to Lender in the Postpetition Collateral by virtue of this Order shall be evidenced by entry of this Order and shall be deemed to be a fully perfected security interests and liens in favor of Lender without the necessity of compliance with any otherwise applicable federal, state or local filings and recording statutes.

22.     Subject to the terms and conditions contained in this paragraph 22, the liens on the Collateral, all replacement liens, and all claims under Section 507(b) of the Bankruptcy Code in favor of Lender are subordinate to the Carve Out (as defined below).  As used herein, the term "Carve Out" shall mean amounts: (a) payable pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the clerk of the Court and (b)(i) for accrued reasonable fees and expenses of attorneys employed by the Debtor (the "Debtor's Counsel") in an amount not to exceed $50,000 (as modified or extended from time to time with the consent of Lender; provided that no modification shall reduce such amount) as of the Termination Date, and (ii) for accrued reasonable fees and expenses of attorneys employed by any statutory committee (including allowed expenses of the members of such statutory committees) pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Committee Professionals" and together with the Debtor's Counsel, the "Case Professionals") in an amount not to exceed $25,000 (as modified or extended from time to time with the consent of Lender; provided that no modification shall reduce such amount) as of the Termination Date.  The Carve Out shall exclude any fees and expenses incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief invalidating, setting aside, avoiding, subordinating, or otherwise adversely affecting Lender's claims against the Debtor's estate (including, the Pre-Petition Indebtedness, the Post-Petition Indebtedness, and Lender's liens on the Collateral and the priority thereof).

23.     Any plan of reorganization of the Debtor shall comply with the provisions of the Restructuring Support Agreement.

24.     Any finding of fact set forth in this Order that is a conclusion of law shall be deemed to be a conclusion of law incorporated by reference in these conclusions of law as though fully set forth herein.

25.     Notice shall be given by Debtor (no later than two business days after the date of this Order) to all creditors and interested parties entitled to receive notice pursuant to Federal Rule of Bankruptcy Procedure 4001 that this Order has been entered.  Pending a final hearing, Debtor may use Cash Collateral and borrow from Lender that amount which is necessary to avoid immediate and irreparable harm, but in no event shall such borrowing exceed $250,000 in the aggregate, upon the terms and conditions stated herein and in the DIP Loan Documents.

Notwithstanding the outcome of the final hearing to consider the Motion, Lender shall be entitled to the liens, priorities and other rights provided in this Order to protect Lender to the extent that Lender has made Postpetition Advances to Debtor or Debtor has used Lender's collateral, including without limitation, Cash Collateral, since the date of this Order.

26.     This Order is an interim order, which expires on the first to occur of:

        a.      the satisfaction of the conditions precedent to Postpetition Advances under the DIP Loan Facility in accordance with Sections 1.1(b) and 1.6(b) of the DIP Loan Agreement;

        b.      five (5) Business Days after denial of entry of the Final Authorizing Order or other denial of approval of the DIP Loan Facility;

        c.      five (5) Business Days following notice from Lender that a condition precedent to the DIP Loan Facility cannot be satisfied; or

        d.      the date of the Final Hearing as set forth below.

27.     Within 24 hours of the entry of this Order, or if this Order shall be entered on Friday or a day immediately preceding a legal holiday, then by the conclusion of the next business day, Debtor shall

14-22602-dob    Doc 8    Filed 11/26/14    Entered 11/26/14 10:04:52    Page 28 of 56

serve, or cause to be served, a copy of the Motion with its attachments (unless it has already been served) and this Order on

      a.      All creditors holding secured claims of record;

      b.      All other entities known, or discoverable after reasonable investigation by Debtor, to claim any interest in Cash Collateral;

      c.      Any committee of creditors appointed pursuant to § 1102 of the Code, or if no committee, the creditors included on the list filed pursuant to Bankruptcy Rule 1007(d);

      d.      The United States Trustee.

      28.      Any objection to the continued effectiveness of this Order shall be in writing and shall be filed with the Court and properly served within 15 days of service of a copy of this Order.  If an objection is timely filed and served, a Final Hearing will be held on _____, 201__ at _____ _.m., as the same may be adjourned or continued by the Court, in Room, U.S. Bankruptcy Court, 111 First Street, Bay City, Michigan 48708.  If no objection is timely filed and served, Debtor may file a Certificate of No Objection and submit the Final Order for entry by the Court without a Final Hearing.

**EXHIBIT B**

**DIP LOAN AGREEMENT**

**SUBJECT TO BANKRUPTCY COURT APPROVAL**

**AGREEMENT REGARDING SECURED DEBTOR-IN-POSSESSION FINANCING,
USE OF CASH COLLATERAL AND THE PROVIDING
OF ADEQUATE PROTECTION**

**dated as of November 25, 2014**

among

**TREETOPS ACQUISITION COMPANY, LLC,**
**as Debtor and Debtor-in-Possession**
**Chapter 11 Case No. 14-22602**
**United States Bankruptcy Court for the**
**Eastern District of Michigan, Northern Division (Bay City)**
**(as Borrower)**

and

**TAC II, LLC**
**(as Lender)**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1
AGREEMENTS ............................................................................................................................... 2
ARTICLE I. POSTPETITION LOAN FACILITIES AND ADVANCES ....................................... 2
    1.1     Postpetition Loan Facility. ................................................................................... 2
       (a)   Interim Postpetition Loan Facility. ..................................................................... 2
       (b)   Final Postpetition Loan Facility. ......................................................................... 2
       (c)   Purpose; Advances Discretionary. ...................................................................... 2
    1.2     Disbursement of Postpetition Advances. ............................................................. 2
    1.3     Conditions for First Postpetition Advance. .......................................................... 2
    1.4     Conditions for All Further Disbursements. .......................................................... 3
    1.5     Incorporation of Prepetition Loan Documents. .................................................... 4
ARTICLE II. PAYMENTS ............................................................................................................. 4
    2.1     Interest Accrual. ................................................................................................... 4
    2.2     Prepayment; Due Date. ........................................................................................ 4
    2.3     Application of Payments. ..................................................................................... 4
    2.4     Payment Method. ................................................................................................. 4
    2.5     Lender's Expenses. .............................................................................................. 4
    2.6     No Setoff or Deduction. ....................................................................................... 4
ARTICLE III. COLLATERAL SECURITY AND PRIORITY; CASH COLLATERAL AND
ADEQUATE PROTECTION ........................................................................................................... 5
    3.1     Grant of Security for Postpetition Indebtedness. ................................................. 5
    3.2     Perfection of Security Interests. ........................................................................... 5
    3.3     Superpriority Administrative Expense Claim. ..................................................... 5
    3.4     Use of Cash and Noncash Collateral. .................................................................. 6
    3.5     Adequate Protection for Prepetition Indebtedness – Replacement Lien. ............. 6
ARTICLE IV. SPECIAL REPORTING ......................................................................................... 6
    4.1     Lender's Consultant. ............................................................................................ 6
    4.2     Initial Budget. ...................................................................................................... 6
    4.3     Other Reports. ...................................................................................................... 6
    4.4     Collateral Audit. .................................................................................................. 6
ARTICLE V. REPRESENTATIONS AND WARRANTIES ......................................................... 7
    5.1     Corporate Existence and Power. .......................................................................... 7
    5.2     Authority. ............................................................................................................. 7
    5.3     Incorporation of Representations and Warranties Under Loan Agreement. ......... 7
    5.4     Litigation. ............................................................................................................ 7
    5.5     Title of Properties. ............................................................................................... 7
ARTICLE VI. COVENANTS .......................................................................................................... 7
    6.1     Affirmative Covenants. ........................................................................................ 7
       (a)   Incorporation of Covenants From Prepetition Loan Documents. ........................ 7
       (b)   Accounting, Access to Records, Books, Etc. ....................................................... 8
       (c)   Reporting Requirements. ...................................................................................... 8
       (d)   Budget Compliance. ............................................................................................. 8
    6.2     Negative Covenants. ............................................................................................ 8
       (a)   Liens. ................................................................................................................... 8
       (b)   Nature of Business. .............................................................................................. 8
       (c)   Section 364(c)(1) and (d) Claims; Use of Cash Collateral. ................................. 8
       (d)   Objection to Indebtedness and Liens. .................................................................. 8
ARTICLE VII. DEFAULT AND REMEDIES ............................................................................... 9

i

| | | | |
|---|---|---|---|
| 7.1 | Events of Default. | ................................................................................ | 9 |
| (a) | Misrepresentation. | ................................................................................ | 9 |
| (b) | Certain Covenants. | ................................................................................ | 9 |
| (c) | Other Defaults. | ................................................................................ | 9 |
| (d) | Liquidation/Conversion of Case/Appointment of Trustee or Examiner. | ................ | 9 |
| (e) | Cross Defaults/Relief From Stay. | ................................................................ | 9 |
| (f) | Adequate Protection Not Acceptable. | ................................................ | 9 |
| (g) | Amendment, Modification or Vacation of Interim Order or Final Order. | ............ | 9 |
| (h) | Entry of Final Order. | ................................................................................ | 9 |
| (i) | Prepetition Debt Payments. | ................................................................ | 9 |
| (j) | Provision Not Binding. | ................................................................ | 10 |
| 7.2 | Remedies. | ................................................................................ | 10 |
| ARTICLE VIII. | MISCELLANEOUS | ................................................................................ | 11 |
| 8.1 | Amendments, Etc. | ................................................................................ | 11 |
| 8.2 | Notices. | ................................................................................ | 11 |
| 8.3 | No Waiver by Conduct; Remedies Cumulative. | ................................ | 12 |
| 8.4 | Reliance on and Survival of Various Provisions. | ................................ | 12 |
| 8.5 | Expenses; Indemnification. | ................................................................ | 12 |
| 8.6 | Successors, Assigns, Participations. | ................................................ | 14 |
| 8.7 | Counterparts. | ................................................................................ | 15 |
| 8.8 | Governing Law. | ................................................................................ | 15 |
| 8.9 | Table of Contents and Headings. | ................................................ | 15 |
| 8.10 | Construction of Certain Provisions. | ................................................ | 15 |
| 8.11 | Integration and Severability. | ................................................................ | 15 |
| 8.12 | Independence of Covenants. | ................................................................ | 15 |
| 8.13 | Interest Rate Limitation. | ................................................................ | 15 |
| 8.14 | No Action. | ................................................................................ | 15 |
| 8.15 | Waiver of Chapter 5 Claims. | ................................................................ | 16 |
| 8.16 | Waiver of Marshalling. | ................................................................ | 16 |
| 8.17 | WAIVER OF JURY TRIAL. | ................................................................ | 16 |
| ARTICLE IX. | DEFINITIONS | ................................................................................ | 17 |
| 9.1 | Certain Definitions. | ................................................................................ | 17 |
| 9.2 | Other Definitions; Rules of Construction. | ................................ | 18 |


EXHIBITS

| | | |
|---|---|---|
| Interim Order | ................................................................................ | A |
| Initial Budget | ................................................................................ | B |

**AGREEMENT REGARDING SECURED DEBTOR-IN-POSSESSION FINANCING,
USE OF CASH COLLATERAL AND THE PROVIDING
OF ADEQUATE PROTECTION**

**THIS AGREEMENT** is made and entered into as of the 21st day of November, 2014, between **TREETOPS ACQUISITION COMPANY, LLC**, a Michigan limited liability company ("Debtor"), as a borrower, and **TAC II, LLC**, a Michigan limited liability company ("Lender").

## INTRODUCTION

A.     Debtor and Lender are parties to certain promissory notes, a mortgage, a security agreement and other related documents, as amended (collectively, the "Prepetition Loan Documents"), pursuant to which Debtor is obligated to Lender, subject to the terms and conditions thereof.  All capitalized terms not defined herein shall have the same meanings ascribed to such terms in the Loan Agreement.

B.     Pursuant to the terms of the Prepetition Loan Documents, Debtor is obligated to Lender on a $5,562,500 Restated Commercial Note and a $7,075,039 Restated Commercial Note, each dated December 1, 2012 (collectively, the "Prepetition Notes"); and, the amount owing to Lender on the Prepetition Notes is secured by first priority perfected mortgage liens on and security interests in substantially all real and personal property of Debtor (the "Prepetition Collateral").

C.     On November 24, 2014, the Debtor and Lender entered into a Restructuring Support Agreement providing in part for financial and other support from Lender to Debtor in a Chapter 11 bankruptcy proceeding to be filed by the Debtor to restructure its indebtedness (the "RSA").

D.     On November 25, 2014 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the Bankruptcy Code of 1978, as amended from time to time, and together with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of Michigan, the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Michigan, Northern Division (Bay City) (the "Bankruptcy Court").

E.     As of the Petition Date, under the Prepetition Notes there was due and owing from Debtor to Lender the aggregate sum of $11,513,394 in principal plus $1,814,283 in unpaid accrued interest, plus costs and expenses, and attorneys' fees of Lender (together with all other obligations of Debtor that arose prior to the Petition Date pursuant to the terms of the Prepetition Loan Documents (as defined herein), the "Prepetition Indebtedness").

F.     Pursuant to the RSA, Lender agreed to make additional loans available to the Debtor post-petition up to the amount of $1,000,000 under a postpetition loan facility (the "Postpetition Loan Facility") and allow the use of cash collateral so as to permit Debtor to continue the operations of its golf and ski resort (the "Treetops Resort").  All amounts owing to Lender under the Postpetition Loan Facility and this Agreement, including all Postpetition Advances (as defined herein), accrued interest and Lender's Expenses (as defined herein), all of which may be owing or become due from Debtor to Lender and all obligations of Debtor under the Postpetition Loan Facility shall be collectively referred to as the "Postpetition Indebtedness."

G.     Accordingly, Lender agrees to establish herein the Postpetition Loan Facility to Debtor and to allow the use of cash collateral, but only upon the terms and subject to the conditions contained herein and in the Interim Order (as defined herein).

1

H.     Debtor has agreed to secure the Postpetition Indebtedness to Lender, and to provide adequate protection for the Prepetition Indebtedness, as provided herein.  Debtor and Lender have each agreed to use their best efforts, and to work diligently and in good faith, to obtain expeditious entry of the Interim Order and a Final Order, if necessary.

## AGREEMENTS

In consideration of the premises and mutual agreements contained herein, the parties hereto agree as follows:

## ARTICLE I.
## POSTPETITION LOAN FACILITIES AND ADVANCES

**1.1     Postpetition Loan Facility.**

(a)     **Interim Postpetition Loan Facility.**  Subsequent to the entry of the Interim Order, but prior to the Termination Date, Lender agrees, subject to the terms and conditions of this Agreement, to make available to Debtor an Interim Postpetition Loan Facility and to make non-revolving loans to Debtor pursuant thereto (each a "Postpetition Advance") from time to time from and including the date of entry of the Interim Order up to but excluding the Termination Date, not to exceed at any time an outstanding aggregate principal sum of $250,000.  As of the date of entry of the Final Order, the Interim Postpetition Loan Facility shall be referred to as the Postpetition Loan Facility.

(b)     **Final Postpetition Loan Facility.**  Subsequent to the entry of the Final Order, Lender agrees, subject to the terms and conditions of this Agreement, to make available to Debtor a Postpetition Loan Facility and to make Postpetition Advances from time to time from and including the date of entry of the Final Order up to but excluding the Termination Date, not to exceed at any time an outstanding aggregate principal sum of $1,000,000.

(c)     **Purpose; Advances Discretionary.**  Postpetition Advances may be used by Debtor only for its business operations or as otherwise permitted by Lender.  All Postpetition Advances shall be made by a written request from Debtor to Lender and made by Lender provided Debtor is then in compliance with the Budget (as defined herein).

**1.2     Disbursement of Postpetition Advances.**  Upon entry of the Interim Order, Debtor may submit written requests to Lender for Postpetition Advances.  Lender shall then, as soon as practicable, make the requested Postpetition Advance following the procedure set forth below, provided the Debtor is then in compliance with the Budget.  Lender agrees that absent an unusual change in circumstances that it intends to make Postpetition Advances.  Subject to the terms and conditions of this Agreement, the proceeds of each Postpetition Advance shall be made available to Debtor in immediately available funds.  All Postpetition Advances and all accrued interest thereon shall be evidenced by a loan account maintained by Lender.

**1.3     Conditions for First Postpetition Advance.**

(a)     The obligation of Lender to make the first Postpetition Advance hereunder is subject to receipt by Lender of the following documents and completion of the following matters, in form and substance satisfactory to Lender:

(i)     **Interim Order**.  A true copy of the Interim Order entered by the Bankruptcy Court.

2

(ii) **Budget**. Lender shall have received and approved, together with Debtor, the Initial Budget.

(iii) **Fees and Expenses**. All fees and Lender Expenses required to be paid herein shall have been paid to Lender, or, if not paid shall be deemed paid by a Postpetition Advance.

(iv) **Miscellaneous**. The delivery of such other documents and the taking of such other actions as Lender shall reasonably request, no order shall have been entered by the Bankruptcy Court which Lender reasonably determines will have a material adverse impact on Debtor, its ability to continue its business operations or Lender's security position, and all obligations of Debtor under any cash collateral order have been fully performed.

(b) The obligation of Lender to make any Postpetition Advance after the Final Order is entered is subject to the receipt by Lender of the documents and completion of the matters set forth in subsection (a) above, as well as each of the following in form and substance satisfactory to Lender:

(i) **Final Order**. A true copy of the Final Order entered by the Bankruptcy Court.

(ii) **Other Documents and Action**. The delivery of such other documents and the taking of such other actions as Lender may reasonably request.

(iii) **Other Orders**. No orders shall have been entered by the Bankruptcy Court which Lender reasonably determines will have a materially adverse impact on Debtor, or its ability to continue its business operations, or Lender's security position.

(iv) **Cash Collateral and Adequate Protection**. Debtor shall be in full compliance with all of its obligations with respect to cash collateral and adequate protection as set forth in the Interim Order.

**1.4    Conditions for All Further Disbursements.** The obligation of Lender to make any Postpetition Advance (including the first Postpetition Advance) is further subject to the satisfaction of the following conditions precedent:

(a) The representations and warranties contained in ARTICLE V hereof shall be true and correct in all material respects on and as of the date such Postpetition Advance is made (both before and after giving effect to such Postpetition Advance) as if such representations and warranties were made on and as of such date;

(b) No Event of Default or Default shall exist or shall have occurred and be continuing on the date such Postpetition Advance is made (whether before or after giving effect to such Postpetition Advance);

(c) The Interim Order or the Final Order shall be in full force and effect as of the date of such Postpetition Advance and shall not have been vacated, reversed, modified or amended in any respect, and, in the event that such order is the subject of any pending appeal, no performance of any obligation of any party hereto shall have been stayed pending appeal; and

3

(d)     Lender shall have no obligation to make any further Postpetition Advances pursuant to the Postpetition Loan Facility if, following entry of either the Interim Order or the Final Order, an appeal is timely taken of either order or any motion is filed with respect to either, raising issues relative to good faith under Section 364(e) of the Bankruptcy Code.  Any Postpetition Advances to be made by Lender following such an appeal or motion shall be made at the sole and absolute discretion of Lender.

(e)     Any objection, motion or complaint shall have been filed by any interested party relating to the amount of the Prepetition Indebtedness or the extent, validity or priority of the liens and security interests of Lender in the Prepetition Collateral.

Debtor shall be deemed to have made a representation and warranty to Lender at the time of the making of each Postpetition Advance as to the matters set forth in subparagraphs (a) and (b) above.

**1.5     Incorporation of Prepetition Loan Documents.**  All terms, conditions and provisions of the Prepetition Loan Documents are incorporated in this Agreement by this reference as terms, conditions and provisions of this Agreement and the Postpetition Loan Facility.  In the event of any inconsistency, the terms, conditions and provisions of this Agreement shall be controlling.

## ARTICLE II.
## PAYMENTS

**2.1     Interest Accrual.**  Debtor shall pay all accrued interest on the Postpetition Advances to Lender on the Termination Date. Lender will not accrue or assert a claim for, the additional interest that would be owing under the Prepetition Indebtedness at the applicable default rate under the Loan Agreement prior to the occurrence of an Event of Default under this Agreement, but, from and after the occurrence of such an Event of Default, Lender shall be entitled to accrue, and shall have an allowed administrative expense claim for, the additional interest that would be owing on the Prepetition Indebtedness at the applicable default rate under the Loan Agreement, in addition to receiving the payment of interest thereon at the applicable non-default rate.

**2.2     Prepayment; Due Date.**  Debtor may at any time and from time to time prepay all or any portion of the Postpetition Indebtedness without premium or penalty. Debtor shall pay to Lender on the Termination Date the entire outstanding principal amount of the Postpetition Indebtedness.

**2.3     Application of Payments.**  All Payments shall be applied in the following order:  (i) Lender's Expenses (as defined herein), (ii) any payment due Lender hereunder which has not been paid when due, and (iii) interest on Postpetition Advances; and (iv) Postpetition Advances.

**2.4     Payment Method.**  All payments to be made by Debtor hereunder will be made in U.S. dollars and in immediately available funds solely for the account of Lender as directed by Lender.  Debtor hereby authorizes Lender to make Postpetition Advances or to charge its account in order to cause timely payment of any amounts due hereunder, including costs and expenses.

**2.5     Lender's Expenses.**  Debtor shall be obligated to pay Lender's Expenses through the date of entry of the Interim Order upon its entry and submission of invoices or other documentation evidencing such expenses.  Debtor shall pay Lender's Expenses thereafter in accordance with Section 8.5(a).

**2.6     No Setoff or Deduction.**  All payments of principal and interest on the Postpetition Indebtedness and all other amounts payable by Debtor hereunder shall be made by Debtor without setoff or counterclaim, and free and clear of, and without deduction or withholding for, or on account of, any

present or future taxes, levies, imposts, duties, fees, assessments or other charges of whatever nature, imposed by any governmental authority, or by any department, agency or other political subdivision or taxing authority.

## ARTICLE III.
## COLLATERAL SECURITY AND PRIORITY;
## CASH COLLATERAL AND ADEQUATE PROTECTION

**3.1    Grant of Security for Postpetition Indebtedness.**  To secure performance of all of the Debtor's obligations under this Agreement and payment of all of the Postpetition Indebtedness, Debtor hereby grants, conveys, mortgages, hypothecates, pledges, sets over, transfers and assigns to Lender a perfected, first priority lien on and security interest in, pursuant to Sections 364(c)(2) and 364(d) of the Bankruptcy Code, all of the property of the estate as that term is defined in Section 541(a) of the Bankruptcy Code, whether arising or existing prepetition or postpetition, including, without limitation, its assets, properties and interests, real and personal, including without limitation all goods, equipment, machinery, vehicles, fixtures, inventory, documents, general intangibles (including all rights to tax claims and refunds, and all patents, trademarks, trade names, copyrights, franchises, licenses and permits, rights under licensing agreements, and the goodwill associated therewith and all federal and state applications and registrations therefor), proceeds of condemnation awards, proceeds of judgments, proceeds of fire and other property insurance, such as business interruption insurance, all causes of action (including, without limitation, recoveries under Sections 542-550 and 553 of the Bankruptcy Code), all rights to merchant and credit card agreements, all rights to payment from any supplier of inventory, and all earned and unearned insurance premium refunds, accounts, accounts receivable, contract rights, chattel paper, choses in action and instruments, and any and all interests in real estate as lessee and proceeds of sales or other dispositions of leasehold interests, all of the foregoing whether now owned or hereafter acquired or arising, and all additions and accessions to, all spare and repair parts, special tools, and equipment and replacements for, all of the foregoing, all returned or repossessed goods, the sale of which gave rise to, all proceeds, rents and products of the foregoing, wherever located, and any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing, and all books, records, files, correspondence, computer programs, tapes, disks, cards, accounting information and other data of Debtor related in any way to the foregoing collateral, including but not limited to any of the foregoing necessary to administer, sell or dispose of any of such collateral, and grants to Lender a lien and security interest in all cash deposits (collectively, the "Postpetition Collateral").

**3.2    Perfection of Security Interests.**  At the request of Lender, Debtor shall execute and deliver to Lender documentation satisfactory to Lender evidencing the security interests and liens granted hereby and providing for the perfection of such security interests and liens, including, without limitation, financing statements, and the automatic stay provisions of Section 362 of the Bankruptcy Code are modified to permit the execution, delivery and filing of such documentation; provided, however, that no such documentation shall be required as a condition to the validity, priority or perfection of any of the security interests or liens created pursuant to this Agreement or any other document, which security interests and liens shall be deemed valid and properly perfected upon entry of the Interim Order.  Debtor irrevocably makes, constitutes and appoints Lender (and all other persons designated by Lender for that purpose) as its true and lawful agent and attorney-in-fact to sign its name on any such agreements, instruments and documents referred to in this Section 3.2 and to deliver such agreements, instruments and documents to such persons as Lender, in its sole discretion, may elect.  Debtor agrees to pay on demand any recording tax, filing fees or other cost incurred by Lender in connection with recording or filing any documentation requested under this Section 3.2.

**3.3    Superpriority Administrative Expense Claim.**  The Postpetition Indebtedness and all obligations of Debtor hereunder shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy

Code, a claim having priority over any and all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code. Lender shall have a superpriority administrative expense claim against Debtor's estate pursuant to Section 364(c)(1) of the Bankruptcy Code for the Postpetition Indebtedness and all related costs and expenses, which shall be prior, senior and superior to any other claim, including any other superpriority administrative expense claim of any kind or nature.

      **3.4**    **Use of Cash and Noncash Collateral.** In addition to the Postpetition Advances, and subject to the terms and conditions of this Agreement, Debtor shall be entitled to use, in the ordinary course of business, all Cash Collateral and all Prepetition Collateral and Postpetition Collateral, which is in or shall come into its possession so long as no Event of Default exists.

      **3.5**    **Adequate Protection for Prepetition Indebtedness – Replacement Lien.** As additional adequate protection for the Prepetition Indebtedness and Debtor's use of Cash Collateral, and as an inducement to Lender to enter into and make the Postpetition Loan Facility available to the Debtor, 2.1, Lender shall be given and Debtor does hereby grant to Lender a full replacement lien, mortgage and security interest in the Postpetition Collateral. If, notwithstanding the adequate protection granted to Lender, Lender has a claim allowable under Section 507(a)(1) of the Bankruptcy Code arising from the use of the Prepetition Collateral, then Lender's claim shall have priority over every other claim under Section 507(a) of the Bankruptcy Code pursuant to Section 507(b) of the Bankruptcy Code, which shall be prior, senior and superior to any other superpriority administrative expense claim of any kind or nature. Notwithstanding the occurrence of a Termination Date and the payment and performance by Debtor of all obligations under this Agreement, Debtor agrees that, as additional adequate protection for the Prepetition Indebtedness, Debtor shall not obtain a financing facility, on a senior or equal basis to the Liens granted to Lender in the Prepetition Collateral, unless the amount of such facility shall be immediately paid to Lender for application against the Prepetition Indebtedness.

### ARTICLE IV.
### SPECIAL REPORTING

      **4.1**    **Lender's Consultant.** Upon the occurrence of an Event of Default, Lender may engage the services of a turnaround consultant ("Consultant") to provide consulting and reporting services as required under this Agreement, to monitor the compliance by Debtor with its obligations under this Agreement and to provide such other services as are reasonably necessary and appropriate in the administration of the Postpetition Indebtedness and the Prepetition Indebtedness, all reasonable costs of which shall constitute fees and expenses which shall be added to the Postpetition Indebtedness.

      **4.2**    **Initial Budget.** Debtor has prepared a budget forecasting revenues and expenses of Debtor for the period commencing with the Petition Date through December 31, 2014 and from January 1, 2015 through March 31, 2015 (the "Initial Budget") (copy attached as **Exhibit B**). Debtor has agreed that its use of cash collateral and the Postpetition Advances shall be based upon and limited to the Initial Budget except, as the same may be modified from time to time by Debtor, or as Lender may approve pursuant to Section 1.2 above.

      **4.3**    **Other Reports.** Consultant shall also prepare and deliver to Lender on a weekly basis actual-to-budget comparison reports, reports of inventory purchases, sales reports and such other reports as Lender shall reasonably require to administer the Postpetition Loan Facility.

      **4.4**    **Collateral Audit.** Lender may perform an audit of the Collateral at such times as Lender shall reasonably require and the reasonable costs of such audits shall constitute Lender's Expenses.

## ARTICLE V.
## REPRESENTATIONS AND WARRANTIES

Debtor represents and warrants that:

**5.1    Corporate Existence and Power.**  Debtor is a limited liability company duly organized, validly existing and in good standing under the laws of Michigan, and is duly qualified to do business in good standing in all other jurisdictions where such qualification is necessary under applicable law. Debtor has all requisite power to own and lease the properties used in its business and to carry on its business as is now being conducted, and to execute and deliver this Agreement and to engage in the transactions contemplated by this Agreement.

**5.2    Authority.**  The execution, delivery and performance by Debtor of this Agreement has been duly authorized by all necessary limited liability company action and are not in contravention of any law, rule or regulation, or any judgment, decree, writ, injunction, order or award of any arbitrator, court or governmental authority, over the terms of the Debtor's Articles of Organization or Operating Agreement, or of any contract or undertaking to which the Debtor is a party or by which the Debtor or its property may be bound or affected and will not result in the imposition of any Lien.

**5.3    Incorporation of Representations and Warranties Under Loan Agreement.**  All representations and warranties as set forth in the Prepetition Loan Documents, are incorporated herein by this reference, and the Debtor hereby reaffirms such representations and warranties as being true and accurate as of the date hereof.

**5.4    Litigation.**  Except as set forth in Schedule 5.4 hereto, to the best of the Debtor's knowledge, there is no action, suit or proceeding pending or threatened against or affecting the Debtor before or by any court, governmental authority or arbitrator, which if adversely decided might result, either individually or collectively, in any material adverse change in the business, properties, operations or condition, financial or otherwise of the Debtor or have any material adverse effect on the legality, validity or enforceability of this Agreement or the orders entered pursuant to and in connection with this Agreement, and, to the best knowledge of the Debtor, there is no basis for any such action, suit or proceeding.

**5.5    Title of Properties.**  The Debtor has good and marketable fee simple title to, and exclusive ownership, free of all liens and encumbrances other than the liens in favor of Lender, and any other liens of record, all of its property.

## ARTICLE VI.
## COVENANTS

**6.1    Affirmative Covenants.**  The Debtor hereby covenants and agrees that, until the Termination Date and thereafter until payment in full of the principal of and accrued interest on all Postpetition Advances, the Prepetition Indebtedness and the performance of all other obligations of the Debtor under this Agreement and the Prepetition Loan Documents, unless Lender shall otherwise consent in writing, they shall:

　　　(a)    **Incorporation of Covenants From Prepetition Loan Documents.**  Observe and fully comply with all the covenants set forth in the Prepetition Loan Documents, the same being incorporated herein by this reference.

(b)     **Accounting, Access to Records, Books, Etc.**  Maintain a system of accounting established and administered in accordance with sound business practices to permit preparation of financial statements and reports in accordance with generally accepted accounting principles and to comply with the requirements of this Agreement, and, at any reasonable time and from time to time, permit Lender, or any agents or representatives thereof to examine and make copies of and abstracts from the records and books of account of, and visit the properties of, Debtor and to discuss the affairs, finances and accounts of Debtor with its directors, officers, employees and independent auditors, and by this provision Debtor does hereby authorize such persons to discuss such affairs, finances and accounts with Lender, and its agents and representatives.

(c)     **Reporting Requirements.**  Furnish to Lender the reports and information required to prepare such reports as required by this Agreement and the Prepetition Loan Documents and as otherwise reasonably requested by Lender.

(d)     **Budget Compliance.**  Maintain net cumulative cash flows in conformance with the Budget on a monthly basis.

**6.2     Negative Covenants.**  Until the Termination Date and thereafter until irrevocable payment in full of the principal of and accrued interest on all Postpetition Advances and the Prepetition Indebtedness and the performance of all other obligations of Debtor under this Agreement and the Prepetition Loan Documents, the Debtor agrees that, unless Lender shall otherwise consent in writing, it shall not:

(a)     **Liens.**  Create, incur or suffer to exist any Lien on any of the assets, rights, revenues or property, real, personal or mixed, tangible or intangible, whether now owned or hereafter acquired, of the Debtor, other than the Liens for postpetition taxes that are not delinquent, liens created pursuant to this Agreement or Liens of record.   6.2(a)

(b)     **Nature of Business.**  Make any substantial change in the nature of its business that it engaged in on the date of this Agreement, engage in any other business other than as conducted on the date of this Agreement or sell or dispose of any inventory other than in the ordinary course, except as otherwise permitted in this Agreement.

(c)     **Section 364(c)(1) and (d) Claims; Use of Cash Collateral.**  Debtor shall not incur any obligations or indebtedness other than pursuant to this Agreement, or permit the creation of any claim other than those allowed hereunder, the payment of which shall be afforded priority over administrative expenses pursuant to Section 364(c)(1) of the Bankruptcy Code; nor shall the Debtor seek in any way to incur indebtedness entitled to priority under Section 364(c)(1) or Section 364(d) of the Bankruptcy Code which are secured by a Lien that is equal, senior or junior to any one or more Liens or security interests heretofore, hereby or hereafter granted to Lender, including, but not limited to, the Liens securing the Postpetition Indebtedness or the Prepetition Indebtedness, except Liens granted as adequate protection as more fully set forth in the Interim Order and the Final Order.

(d)     **Objection to Indebtedness and Liens.**  Debtor will not object to the perfection, validity, priority or extent of either the Prepetition Indebtedness, the Postpetition Indebtedness or the Liens in favor of Lender securing either the Prepetition Indebtedness or the Postpetition Indebtedness.

## ARTICLE VII.
## DEFAULT AND REMEDIES

**7.1    Events of Default.**  The occurrence of any one of the following events or conditions shall be deemed an "Event of Default" hereunder unless waived by Lender pursuant to Section 9.1:

(a)    **Misrepresentation.**    Any representation or warranty made by Debtor in ARTICLE V hereof, in any of the Postpetition Documents, or any other certificate, report, financial statement or other document furnished by or on behalf of Debtor in connection with this Agreement shall prove to have been incorrect in any material respect when made or deemed made.

(b)    **Certain Covenants.**  Debtor shall fail to perform or observe any term, covenant or agreement contained in ARTICLE VI (excluding Sections 6.1(a) and 6.1(b) (to the extent that (b) relates to compliance with laws other than the Bankruptcy Code), 6.2(b), in any Postpetition Document or in the Interim Order or the Final Order.

(c)    **Other Defaults.**    Debtor shall fail to perform or observe any other term, covenant or agreement contained in this Agreement, and any such failure shall remain unremedied for ten (10) calendar days after the earlier of (i) the discovery thereof by Debtor, or (ii) notice thereof shall have been given to Debtor by Lender.

(d)    **Liquidation/Conversion of Case/Appointment of Trustee or Examiner.**  Any of Debtor's Chapter 11 bankruptcy case is converted to a case under Chapter 7 of the Bankruptcy Code, or a trustee or examiner with enlarged powers relating to the operation of the business of Debtor is appointed in Debtor's Chapter 11 bankruptcy case, or Debtor's bankruptcy case is dismissed (or any judgment, order or decree therefor shall be entered).

(e)    **Cross Defaults/Relief From Stay.**  The Bankruptcy Court shall enter an order (i) granting a creditor of Debtor relief from the automatic stay provided by Section 362 of the Bankruptcy Code to permit foreclosure to the holder of assets having an aggregate value in excess of $50,000, or (ii) terminates any of Debtor's rights to use Cash Collateral, or (iii) which, in the reasonable discretion of Lender, has a material adverse impact on Debtor or its ability to continue its business operations, without the prior written consent of Lender.

(f)    **Adequate Protection Not Acceptable.**    Any creditor of Debtor, including holders of any subordinated debt, receives any adequate protection payment which is not fully acceptable to Lender in its sole discretion, or any Lien is granted as adequate protection other than as set forth in the Interim Order or the Final Order.

(g)    **Amendment, Modification or Vacation of Interim Order or Final Order.**  An order of the Bankruptcy Court is entered amending, supplementing, staying for a period of ten (10) days or more, vacating or otherwise modifying the Interim Order or the Final Order, without the prior written consent of Lender.

(h)    **Entry of Final Order.**  The Final Order is not entered by the Bankruptcy Court within sixty (60) days of entry of the Interim Order.

(i)    **Prepetition Debt Payments.**  Debtor makes any payments on prepetition claims, in addition to payments on the Prepetition Indebtedness, unless approved by the Bankruptcy Court.

9

(j)  **Provision Not Binding.**  Any provision of this Agreement shall cease to be valid and binding on Debtor, or Debtor shall so assert in any pleading filed in any court.

7.2  **Remedies.**

(a)  Upon the occurrence and during the continuance of any Event of Default, Lender shall, by notice to Debtor (i) terminate the Postpetition Loan Facility, including the Postpetition Interim Loan Facility, and/or (ii) declare the outstanding principal of, and accrued interest on, all Postpetition Advances and all other amounts owing under this Agreement to be immediately accelerated and due and payable, and/or (iii) after five (5) Business Days' written notice, prevent Debtor's further use of and demand immediate delivery of Cash Collateral, and/or (iv) demand the immediate delivery of all Cash Collateral, or any one or more of the foregoing; provided that, in the case of any event or condition described in Section 7.1(d) (other than a conversion of Debtor's Chapter 11 case to a Chapter 7 case), Debtor may continue to use Cash Collateral to the extent necessary to make disbursements in the ordinary course of business for two (2) Business Days thereafter.  After expiration of the five (5) Business Days' notice period referred to in clause (iii) above, Debtor's right to use Cash Collateral, Prepetition Collateral and Postpetition Collateral under the Interim Order or Final Order shall terminate.

(b)  Following an Event of Default, Lender may, at any time or from time to time, in addition to all other rights available to Lender, and without prior notice to Debtor or any other party, take control, in any manner, of any item of payment or proceeds owing to Debtor and apply it to the Postpetition Indebtedness as provided in this Agreement, set off against and appropriate and apply to the Postpetition Indebtedness any debt owing to, and any other funds held in any manner for the account of, the Debtor.  Debtor hereby consents to and confirms the foregoing arrangements and confirms Lender's rights of banker's lien and setoff.  Nothing in this Agreement shall be deemed a waiver of Lender's rights of lien or setoff.

(c)  The automatic stay provided under Section 362 of the Bankruptcy Code shall be deemed lifted or modified to the extent necessary to allow Lender to take the actions described in Section 7.2, after five (5) days written notice of the occurrence of an Event of Default to Debtor, Debtor's counsel, any committees appointed under Section 1102 of the Bankruptcy Code and any other party that has asserted a lien or other interest in the Collateral without further notice or a hearing (except as to the sole issue of whether an Event of Default has occurred), which rights are hereby waived.

(d)  Subject to the notice provisions in this Section 7.2, at any time following an Event of Default, Lender may (i) notify any or all of Debtor's account debtors that Debtor's accounts receivable have been assigned to Lender and that Lender has a security interest therein, (ii) direct such account debtors to make all payments due from them to Debtor directly to Lender, (iii) enforce payment of and collect, by legal proceedings or otherwise, Debtor's accounts receivable in the name of Lender and Debtor, (iv) in the name of Debtor, or otherwise, demand, collect, receive and receipt for, compound, compromise, settle and give acquittance for, and prosecute and discontinue any suits or proceedings in respect of any or all of the Postpetition Collateral, (v) take any action which Lender may deem necessary or desirable in order to realize on the Postpetition Collateral, including the power to perform any contract or endorse in the name of Debtor without recourse to Debtor, any checks, drafts, notes or other instruments or documents received in payment of or on account of the Postpetition Collateral, (vi) enter upon the premises where any of the Postpetition Collateral not in the possession of Lender is located and take possession thereof and remove the same, with or without judicial process, (vii) reduce their claim to judgment or foreclosure or otherwise enforce the security interests herein granted and assigned, in whole or in part, by any available judicial procedure, (viii) after notification, if any, provided for herein, sell, lease, or otherwise dispose of, with the consent of Lender on the premises of Debtor, or elsewhere, all or any part of the Postpetition Collateral, in its then condition or following any commercially reasonable

preparation or processing, and any such sale or other disposition may be as a unit or in parcels, by public or private proceedings, and by way of one or more contracts (it being agreed that the sale of any part of the Postpetition Collateral shall not exhaust Lender's power of sale, but sales may be made from time to time, and at any time, until all of the Postpetition Collateral has been sold or until all of the Postpetition Indebtedness has been fully paid and performed, whichever comes first), and at any such sale it shall not be necessary to exhibit any of the Postpetition Collateral, (ix) at its discretion, retain the Postpetition Collateral in satisfaction of the Postpetition Indebtedness whenever the circumstances are such that Lender is entitled to do so under the Uniform Commercial Code or otherwise, and (x) exercise any and all other rights, remedies and privileges Lender may have under this Agreement or under any other agreement or at law or in equity. The above rights, remedies and payments may be applied to the Prepetition Indebtedness once the Postpetition Indebtedness has been paid in full. No right, power or remedy conferred by this Agreement or any other agreement upon Lender shall be exclusive of any other right, power or remedy referred to herein or therein or now or hereafter available at law, in equity, by statute or otherwise.

(e)     Subject to the notice provisions of this Section 7.2, Lender may, in addition to the remedies provided in this Section 7.2, exercise and enforce any and all other rights and remedies available to it, whether arising under this Agreement or under applicable law, in any manner deemed appropriate by Lender, including suit in equity, action at law, or other appropriate proceedings, whether for the specific performance (to the extent permitted by law) of any covenant or agreement contained in this Agreement or in aid of the exercise of any power granted in this Agreement.

## ARTICLE VIII.
## MISCELLANEOUS

### 8.1     Amendments, Etc.

(a)     No amendment, modification, termination or waiver of any provision of this Agreement or any other document or agreement between Debtor and Lender, nor any consent to any departure therefrom, shall be effective unless the same shall be in writing and signed by Lender; provided, however, that no such amendment, modification, termination, waiver or consent shall, without the consent of Lender, (i) authorize or permit the extension of time for, or any reduction of the amount of, any payment of the principal of, or interest on, Postpetition Advances, or any fees or other amount payable hereunder, (ii) amend or terminate the Postpetition Loan Facility or modify the provisions of this Section 8.1(a) or (iii) release any collateral which has been granted by Debtor to Lender; provided further that no consent shall be required with respect sales of merchandise in the ordinary course of business.

(b)     Any such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

### 8.2     Notices.

(a)     Except as otherwise provided in Section 8.2(c) hereof, all notices and other communications hereunder shall be in writing and shall be delivered or sent to Debtor, Attention: Richard B. Owens, E-mail Address:   bowens@treetops.com , with a copy to Kerr Russell & Weber, E-mail Address:  jbank@kerr-russell.com ,  and to Lender at LCM Group, Inc., Attention:  Mr. D. Scott Luttrell, E-mail Address:  sluttrell@lcmgroup.com, with a copy to Varnum LLP, Attention:  Robert D. Mollhagen, Esq., E-mail Address:  rdmollhagen@varnumlaw.com, or to such other address as may be designated by Debtor or Lender by notice to the other parties hereto.   All notices and other communications shall be deemed to have been given at the time of actual delivery thereof to such address, or if sent by certified or registered mail, postage prepaid, to such address, on the third day after the date of

mailing, or in the case of telecopy notice, upon receipt thereof; provided, however, that notices to Lender shall not be effective until received.

(b)     Notices by Debtor to the Lender with respect to terminations or reductions of the Postpetition Loan Facility pursuant to requests for Postpetition Advances pursuant to Section 1.2 shall be irrevocable and binding on Debtor.

(c)     Any notice to be given by Debtor to Lender pursuant to Section 1.2 and any notice to be given by Lender hereunder, may be given by telephone, and all such notices given by Debtor must be immediately confirmed in writing in the manner provided in Section 8.2(a). Any such notice given by telephone shall be deemed effective upon receipt thereof by the party to whom such notice is to be given.

**8.3     No Waiver by Conduct; Remedies Cumulative.** No course of dealing on the part of Lender, nor any delay or failure on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver of such right, power or privilege or otherwise prejudice Lender's rights and remedies hereunder; nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right, power or privilege. No right or remedy conferred upon or reserved to Lender under this Agreement is intended to be exclusive of any other right or remedy, and every right and remedy shall be cumulative and in addition to every other right or remedy granted thereunder or now or hereafter existing under any applicable law. Every right and remedy granted by this Agreement or by applicable law to Lender may be exercised from time to time and as often as may be deemed expedient by Lender and, unless contrary to the express provisions of this Agreement, irrespective of the occurrence or continuance of any Default or Event of Default.

**8.4     Reliance on and Survival of Various Provisions.** All terms, covenants, agreements, representations and warranties of Debtor made herein or in any certificate, report, financial statement or other document furnished by or on behalf of Debtor in connection with this Agreement shall be deemed to be material and to have been relied upon by Lender, notwithstanding any investigation heretofore or hereafter made by Lender, and those covenants and agreements of Debtor set forth in Section 8.5 hereof shall survive the repayment in full of the Postpetition Advances and the termination of the Postpetition Loan Facility.

**8.5     Expenses; Indemnification.**

(a)     Subject to any specific limitations in this Agreement, Debtor shall be responsible for the payment of all reasonable fees and out-of-pocket disbursements incurred by Lender, including reasonable fees of counsel, consultants, experts and other professionals and court costs, in any way arising from or in connection with this Agreement, any of the Prepetition or Postpetition Collateral or Indebtedness, this Agreement, the Prepetition Notes or any other document or agreement executed by Debtor and Lender, or the business relationship relating to cash management between Lender, on the one hand, and Debtor, on the other hand, including, without limitation ("Lender's Expenses"):

(i)     all fees and expenses (including recording fees and insurance policy fees) of Lender and its counsel for the preparation, examination, approval, negotiation, execution and delivery of, or the closing of any of the transactions contemplated by, this Agreement;

(ii)     all fees and out-of-pocket disbursements incurred by Lender, including attorneys' fees, in any way arising from or in connection with any action taken by Lender to monitor, advise, administer, enforce or collect any of

the Prepetition Indebtedness or Postpetition Indebtedness or any other obligations of Debtor under this Agreement, the Interim Order, the Final Order, or any other existing or future document or agreement, or an Event of Default under this Agreement or any other default arising from or relating to the business relationship relating to cash management between Lender, on the one hand, and Debtor, on the other hand, or otherwise securing any of the Prepetition Indebtedness or Postpetition Indebtedness, including any actions to lift the automatic stay or to otherwise in any way monitor or participate in any bankruptcy, reorganization or insolvency proceeding of Debtor;

(iii)    all expenses and fees (including attorneys' fees) incurred in relation to, in connection with, in defense of and/or in prosecution of any litigation instituted by Debtor, Lender or any third party, including any committees, against or involving Lender arising from, relating to, or in connection with the Prepetition Indebtedness, the Postpetition Indebtedness, or Debtor's other obligations, this Agreement, any of the Prepetition Collateral or the Postpetition Collateral, any of the documents or the business relationship between Lender, on the one hand, and Debtor, on the other hand, including any so-called "lender liability" action, any claim and delivery or other action for possession of, or foreclosure on, any of the Prepetition Collateral or the Postpetition Collateral, post-judgment enforcement of any rights or remedies including enforcement of any judgments, and prosecution of any appeals (whether discretionary or as of right and whether in connection with pre-judgment or post-judgment matters);

(iv)    all costs, expenses and fees incurred by Lender or their agents in connection with appraisals and reappraisals of all or any of the Prepetition Collateral or the Postpetition Collateral (and Debtor shall fully cooperate with such appraisers and make its property available for appraisal in connection with as many appraisals as Lender may reasonably request); and

(v)    all costs, expenses and fees incurred by Lender and/or its counsel in connection with consultants, expert witnesses or other professionals retained by Lender and/or its counsel in order to assist, advise and/or give testimony with respect to any matter relating to the Prepetition Collateral or the Postpetition Collateral, the Prepetition Indebtedness, the Postpetition Indebtedness, any document executed between Debtor and Lender, or the business relationship between Lender, on the one hand, and Debtor, on the other hand (and Debtor shall fully cooperate with such consultant, expert witness or other professional and shall make its premises, books and records, accounting systems, computer systems and other media for the recordation of information available to such persons), including, without limitation, fees of the Consultant.

The agreement of Debtor, to be responsible for the reasonable attorneys' fees and costs of Lender, shall apply regardless of whether or not Lender prevails in whole or in part in any action, proceeding, litigation or otherwise and regardless of the nature of any action or litigation or the theories or bases of recovery or defense.

All of the foregoing costs, expenses and reimbursement obligations set forth in this paragraph shall be part of the Prepetition Indebtedness or the Postpetition Indebtedness, as appropriate, and shall be secured by all of the Prepetition Collateral or the Postpetition Collateral, as appropriate.

For purposes hereof, "Claims" shall mean any demand, claim, action or cause of action, damage, liability, loss, cost, debt, expense, obligation, tax, assessment, charge, lawsuit, contract, agreement, undertaking or deficiency, of any kind or nature, whether known or unknown, fixed, actual, accrued or contingent, liquidated or unliquidated (including interest, penalties, attorneys' fees and other costs and expenses incident to proceedings or investigations relating to any of the foregoing or the defense of any of the foregoing), whether or not litigation has commenced.

Lender's Expenses arising after entry of the Interim Order, including, without limitation, Varnum LLP, shall be due by Debtor to Lender, within 7 days of receipt of a summary of a bill therefor and, if requested by Debtor, a redacted detailed invoice. Should Debtor fail to pay any invoice within this 7-day period, Lender, such amount shall be a deemed Postpetition Advance on Lender's books and records, and to provide notice to Debtor that such action has been taken. Such payment by Debtor shall not prejudice the rights of any party, including Debtor, to object to the reasonableness of such fees and costs, and Debtor and any committees appointed under Section 1102 of the Bankruptcy Code shall be served with a copy of each summary bill.

(b)     In addition to the payment of expenses provided pursuant to this Section 8.5, and whether or not the transactions contemplated hereby shall be consummated, Debtor hereby agrees to indemnify and to hold harmless Lender and its respective officers, directors, employees, attorneys and agents, from and against any and all claims, damages, losses, liabilities, costs or expenses of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel) which any of them may incur or which may be claimed against any of them by reason of or in connection with the negotiation, execution or delivery of this Agreement or the consummation or administration of the transactions contemplated hereby; provided, however, that Debtor shall not be required to indemnify any such person to the extent that claims, damages, losses, liabilities, costs or expenses arise from the gross negligence or willful misconduct of such person. To the extent that the foregoing indemnity of Debtor may be unenforceable because it is violative of any law or public policy, Debtor shall contribute the maximum portion which it is permitted to pay and satisfy under applicable law to the payment and satisfaction of such indemnified claims, damages, losses, liabilities, costs or expenses.

**8.6     Successors, Assigns, Participations.**

(a)     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including any subsequently appointed trustee, whether in Debtor's Chapter 11 case or any subsequent Chapter 7 case; provided that Debtor may not assign its rights or obligations hereunder and Lender shall not be obligated to make any Postpetition Advance hereunder to any entity other than Debtor.

(b)     Lender shall have the right at any time to sell, assign, transfer or negotiate all or any part of its Postpetition Advances or the Postpetition Loan Facility and its rights and benefits under this Agreement to any third party. In the case of any sale, transfer or negotiation of all or part of its Postpetition Advances or the Postpetition Loan Facility authorized under this Section 8.6(b), the assignee, transferee or recipient shall have, to the extent of such sale, assignment, transfer or negotiation, the same rights, benefits and obligations as it would if it were Lender with respect to such Postpetition Advances, including without limitation (i) the right to approve or disapprove actions which, in accordance with the terms hereof, require the approval of Lender, and (ii) the obligation to fund Postpetition Advances pursuant to ARTICLE I.

**8.7    Counterparts.**  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart.

**8.8    Governing Law.**  This Agreement is a contract made under, and shall be governed by and construed in accordance with, the laws of the State of Michigan applicable to contracts made and to be performed entirely within such State and without giving effect to choice of law principles of such State.

**8.9    Table of Contents and Headings.**  The table of contents and the headings of the various subdivisions hereof are for the convenience of reference only and shall in no way modify any of the terms or provisions hereof.

**8.10    Construction of Certain Provisions.**  If any provision of this Agreement refers to any action to be taken by any person, or which such person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such person, whether or not expressly specified in such provision.

**8.11    Integration and Severability.**  This Agreement, the Interim Order and the Final Order embody the entire agreement and understanding between Debtor and Lender, and supersede all prior agreements and understandings, relating to the subject matter hereof.  In case any one or more of the obligations of Debtor under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining obligations of Debtor shall not in any way be affected or impaired thereby, and such invalidity, illegality or unenforceability in one jurisdiction shall not affect the validity, legality or enforceability of the obligations of Debtor under this Agreement in any other jurisdiction.

**8.12    Independence of Covenants.**  All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any such covenant, the fact that it would be permitted by an exception to, or would be otherwise within the limitations of, another covenant shall not avoid the occurrence of a Default or an Event of Default or any event or condition which with notice or lapse of time, or both, could become such a Default or an Event of Default if such action is taken or such condition exists.

**8.13    Interest Rate Limitation.**  Notwithstanding any provision of this Agreement, in no event shall the amount of interest paid or agreed to be paid by Debtor exceed an amount computed at the highest rate of interest permissible under applicable law.  If, from any circumstances whatsoever, fulfillment of any provision of this Agreement at the time performance of such provision shall be due, shall involve exceeding the interest rate limitation validly prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, *ipso facto*, the obligations to be fulfilled shall be reduced to an amount computed at the highest rate of interest permissible under applicable law, and if for any reason whatsoever Lender shall ever receive as interest an amount which would be deemed unlawful under such applicable law, such interest shall be automatically applied to the payment of principal of the Postpetition Advances outstanding hereunder (whether or not then due and payable) and not to the payment of interest, or shall be refunded to Debtor if such principal and all other obligations of Debtor to Lender have been paid in full.

**8.14    No Action.**  Debtor on its own behalf only covenants that it will refrain from commencing any action or suit, or prosecuting any pending action or suit, in law or in equity, against Lender, or its respective agents, attorneys, employees, heirs, executors, administrators, officers, directors, successors and assigns, on account of any action or cause of action relating to the Prepetition Loan

Documents and the Prepetition Indebtedness which now exists or which may hereafter accrue in its favor upon the basis of facts existing at the date hereof, and hereby release Lender forever from any and all such claims.

      **8.15    Waiver of Chapter 5 Claims.**  In consideration of the Postpetition Advances to be made to Debtor by Lender hereunder, Debtor hereby further waives any claims it might have against Lender under Chapter 5 of the Bankruptcy Code, and agrees not to assert any such claims against Lender in any form or manner whatsoever; provided, however, that the foregoing shall in no manner affect or impact or impair the ability of any creditors' committee to challenge the validity, priority or extent of the obligations due to and liens of Lender. **[Delete??]**

      **8.16    Waiver of Marshalling.**  Lender shall have no obligation to marshal all or any portion of the Prepetition Collateral or the Postpetition Collateral upon any realization or foreclosure under this Agreement or the Prepetition Loan Documents, and any court having jurisdiction over this Agreement may order the sale of all or any portion of the Prepetition Collateral or the Postpetition Collateral as an entirety.  Any sale of, or the grant of options to purchase (for the option period thereof or after exercise thereof), or any other realization upon, all or any portion of the Prepetition Collateral or the Postpetition Collateral under this Agreement or the Prepetition Loan Documents by Lender after foreclosure shall operate to divest all right, title, interest, claim and demand, either at law or in equity, of Debtor in and to the Prepetition Collateral or the Postpetition Collateral so sold, optioned or realized upon, and shall bar both at law and in equity Debtor and any and all persons claiming or attempting to claim the Prepetition Collateral or the Postpetition Collateral so sold, optioned or realized upon or any part thereof from, through and under Debtor.  No delay on the part of Lender in exercising any power of sale, lien, option or other right hereunder or under the Prepetition Loan Documents and no notice or demand which may be given to or made upon Debtor with respect to any power of sale, lien, option or any other right hereunder or thereunder shall constitute a waiver thereof, or limit or impair the right of Lender to take any action or to exercise any power of sale, lien, option or any other right under this Agreement, the Prepetition Loan Documents or otherwise, nor shall any single or partial exercise thereof, or the exercise of any power, lien, option or other right under this Agreement or otherwise, all without notice or demand (except as otherwise provided by the terms of this Agreement), prejudice its rights against Debtor in any respect. Each and every remedy given Lender shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

      **8.17    WAIVER OF JURY TRIAL.  LENDER AND DEBTOR, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE POSTPETITION NOTES OR ANY RELATED INSTRUMENT OR AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY OF THEM.  NEITHER LENDER NOR DEBTOR SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER LENDER OR DEBTOR EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY ALL OF THEM.**

## ARTICLE IX.
## DEFINITIONS

**9.1     Certain Definitions.**  As used herein the following terms have the following respective meanings, and to the extent, if any, that the definitions vary from definitions of the same terms in the Bankruptcy Code, the definitions set forth herein control:

"**Budget**" shall mean the Initial Budget (as defined in Section 4.2) or the latest revision thereof approved by Lender in writing.

"**Business Day**" shall mean a day other than a Saturday, Sunday or a national holiday.

"**Cash Collateral**" shall mean cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate of the Debtor and any entity other than Debtor has an interest, and includes the proceeds, products, offspring, rents, or profits of the foregoing, subject to a security interest as provided in Section 552(b) of the Bankruptcy Code, in which Lender has any interest.

"**Default**" shall mean any of the events or conditions described in Section 7.1 which might become an Event of Default with notice or the passage of time, or both.

"**Dollars**" or "**$**" shall mean the lawful money of the United States of America.

"**Effective Date**" shall mean the date upon which all of the conditions set forth in Section 1.3(a) have been satisfied.

"**Event of Default**" shall mean any of the events or conditions described in Section 7.1.

"**Final Order**" shall mean an order of the Bankruptcy Court authorizing and approving this Agreement, and providing for postpetition financing pursuant to Sections 364(c)(2) and (3) and 364(d) of the Bankruptcy Code and a superpriority administrative expense status for all Postpetition Advances under Section 364(c)(1) of the Bankruptcy Code, allowing the use of cash collateral and providing adequate protection, in form acceptable to Lender, including the Interim Order, if it becomes a Final Court Order.

"**Final Court Order**" shall mean an order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken with respect to issues relative to good faith under Section 364(e) of the Bankruptcy Code, or (ii) any such appeal has been timely taken and such appeal has been finally determined or dismissed.

"**Interim**" when added to any defined term, shall modify that defined term to refer solely to the period of time governed by the Interim Order and during which Lender has made only the Postpetition Interim Loan Facility.

"**Interim Order**" shall mean an interim order of the Bankruptcy Court authorizing and approving the Postpetition Interim Loan Facility, and providing for postpetition financing pursuant to Sections 364(c)(2) and (3) and 364(d) of the Bankruptcy Code and a superpriority administrative expense status for all Postpetition Advances under Section 364(c)(1) of the Bankruptcy Code, allowing use of cash collateral and providing adequate protection, in the form annexed hereto as Exhibit A or otherwise acceptable to Lender.

"**Lien**" shall mean any pledge, assignment, hypothecation, mortgage, security interest, deposit arrangement, option, conditional sale or title retaining contract, sale and leaseback transaction, financing statement filing, lessor's or lessee's interest under any lease, subordination of any claim or right, or any other type of lien, charge, encumbrance, preferential arrangement or other claim or right.

"**Postpetition Advance**" shall mean any postpetition advance made under the Postpetition Loan Facility, unless otherwise specified.

"**Postpetition Collateral**" shall have the meaning set forth in Section 3.1 above.

"**Postpetition Loan Documents**" shall mean this Agreement and any and all other documents and instruments executed in connection therewith by or between Debtor, the Guarantor and Lender.

"**Prepetition Loan Documents**" shall mean any and all documents, agreements and notes executed by or between Debtor, the Guarantor and Lender prior to the Petition Date relating to the Prepetition Loans.

"**Termination Date**" shall mean: (a) for the Postpetition Interim Loan Facility, the earlier to occur of (i) the satisfaction of the conditions precedent to Postpetition Advances under the Postpetition Loan Facility in accordance with Sections 1.1 and 1.3(b), (ii) two (2) Business Days following denial of the Final Order or other denial of approval of the Postpetition Loan Facility, (iii) two (2) Business Days following notice from Lender that a condition precedent to Postpetition Advances under the Postpetition Loan Facility cannot be satisfied, or (iv) the date on which the Postpetition Interim Loan Facility is terminated pursuant to Section 7.2(a); and (b) for the Postpetition Loan Facility, the earlier of (i) March 31, 2014, or such extended date as Debtor and Lender shall mutually agree, (ii) the effective date of any confirmed plan of reorganization, or (iii) the date on which the Postpetition Loan Facility is terminated pursuant to Section 7.2(a).

9.2 **Other Definitions; Rules of Construction.** As used herein, the terms "**Agent**," "**Agreement**," "**Bankruptcy Code**," "**Bankruptcy Court**," "**Banks**," "**Credit Agreement**," "**Debtor**," "**Petition**," "**Petition Date**," "**Postpetition Indebtedness**," "**Prepetition Collateral**," "**Prepetition Indebtedness**" and "**Security Agreement**" shall have the respective meanings ascribed thereto in the introductory paragraphs of this Agreement. Such terms, together with the other terms defined in Section 9.1, shall include both the singular and the plural forms thereof and shall be construed accordingly. All computations required hereunder and all financial terms used herein shall be made or construed in accordance with generally accepted accounting principles unless such principles are inconsistent with the express requirements of this Agreement. Use of the terms "herein," "hereof," and "hereunder" shall be deemed references to this Agreement in its entirety and not to the Section or clause in which such term appears. References to "Sections" and "subsections" shall be to Sections and subsections, respectively, of this Agreement unless otherwise specifically provided.

**[SIGNATURES ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed and delivered the day and year first above written.

**DEBTOR:**

**TREETOPS ACQUISITION COMPANY, LLC,**
Debtor and Debtor-in-Possession


By: ___*/s/ Richard B. Owens*_____
       Richard B. Owens
Its:    Manager


**LENDER**:

**TAC II, LLC,**
a Michigan limited liability company
By:  LCM Group, Inc.
a Delaware corporation
Its:   Manager


By: ___*/s/ D. Scott Luttrell*_____
       D. Scott Luttrell
Its:    President


and


By:    R & R Partners Limited Partnership,
       an Ohio limited partnership
Its:    Manager
By:    R & R Capital, LLC,
       an Ohio limited liability company
Its:    General Partner


By: ___*/s/ Mark E. Ridenour*_____
       Mark E. Ridenour
Its:    Manager

**EXHIBIT A**

**INTERIM ORDER**


**See attached to Motion**

**EXHIBIT B**

**INITIAL BUDGET**


**See attached to Motion.**

**EXHIBIT C**

**BUDGET**

TREETOPS RESORT
**CASH FLOW PROJECTION**                    Nov 25, 2014 thru Mar 31, 2015

|  | B | B | B | B | B |
|---|---|---|---|---|---|
|  | **Nov 25 to 30, 2014** | **Dec-14** | **Jan-15** | **Feb-15** | **Mar-15** |
| **Receipts from Sales:** |  |  |  |  |  |
| CASH | 20000 | 237179 | 155519 | 269209 | 121403 |
| CREDIT CARD | 30000 | 509482 | 390284 | 505008 | 350774 |
| **Total Cash Receipts:** | 50,000 | 746,660 | 545,803 | 774,217 | 472,176 |
| **LESS CASH DISBURSEMENTS:** |  |  |  |  |  |
| **AP check runs** |  | 487,783 | 441,736 | 438,928 | 429,260 |
| **Cap Exp** |  |  |  |  |  |
| **Property Taxes** |  |  |  | 36,500 |  |
| **Acrisure  PEO** |  | 521,399 | 619,276 | 404,275 | 328,724 |
| **Sales Tax** |  | 2,555 | 22,540 | 23,571 | 24,041 |
| **CC fees** |  | 1,570 | 13,863 | 14,503 | 15,339 |
| **Liquor purchases** | 500 | 17,763 | 17,317 | 15,579 | 6,236 |
| **Other disbursements** |  |  |  |  |  |
| **Condo Owners** |  |  | 2,283 | 1,427 | 926 |
| **Adjustments & Misc** | (3,500) | (14,500) | (22,851) | (21,287) | (16,507) |
| **Chapter 11 professionals** |  |  | 50,000 | 50,000 | 50,000 |
| **US Trustee Fees** |  |  | 4,875 |  | 9,750 |
| **Total Cash Disbursements** | -3,000 | 1,016,570 | 1,149,039 | 963,496 | 847,769 |
| *OTHER FUNDING ACTIVITY:* |  |  |  |  |  |
| **DIP LOANS** | *900,000* |  | *350,000* | *175,000* | *375,000* |
| *TOTAL OTHER FUNDING :* | 0 | 0 | 350000 | 175000 | 375000 |
| **Current Month Net Cash Flow:** | 53,000 | (269,910) | (253,236) | (14,279) | (593) |
| **Cumulativ Cash Flow balance:** | 573,000 | 303,090 | 49,854 | 35,575 | 34,982 |
|  | **Nov** | **Dec** | **Jan** | **Feb** | **Mar** |

Nov 25, 2014 Cash Balance    520,000